## THE ALLER and THE AMERICA.

### SOULE v. THE ALLER and THE AMERICA.

(District Court, S. D. New York. December 27, 1893.)

COLLISION—ANCHORAGE GROUND—RAISING ANCHOR — BAD LOOKOUT — SIGNALS IMMATERIAL.

The steamship A. collided in New York harbor with a bark lying on anchorage ground, and at the time engaged, with the aid of a tug, in getting up her anchor. At the time of collision the anchor had not left the ground. There was confusion as to the whistles given by the A.; she asserting that she gave several signals of one blast, indicating that she would go astern of the bark; the bark and tug both understanding the signals as of two blasts. *Held*, that the A. was solely in fault for the collision, having taken upon herself all risks in going unnecessarily on anchorage ground, and for not properly observing the maneuvers of the bark, and avoiding her, and that the tug was not in fault; her signals of two blasts not having influenced the actions of the A., and the tug not being under any obligation to try to drag the bark out of the way of the steamship.

In Admiralty. Libel by Enos C. Soule and others against the steamship Aller and the steam tug America for collision. Decree against the Aller, and dismissing the libel as to the America.

Wing, Shoudy & Putnam, for libelants.
Shipman, Larocque & Choate, for the Aller.
Wilcox, Adams & Green, for the America.

BROWN, District Judge. Between 9 and 10 o'clock in the morning of April 4, 1893, as the North German Lloyd steamship Aller was proceeding out to sea, she came in collision, when between Governor's and Bedloe's islands, with the libelant's bark, Enos Soule, causing damages, for which the above libel was filed.

The tide was flood. The bark had previously been at anchor. The tug America, not long before the collision, had come on the bark's port side, to take her in tow. For the purpose of assisting in raising her anchor and getting her under way, the tug had turned the bark around through the southward and eastward, so as to head up stream; and she then ran up sufficiently to have the anchor chain perpendicular, so that it might the more easily be heaved aboard by the windlass. In winding the bark around, the anchor had been dragged somewhat to the southward and eastward. While heaving in the anchor, the bark was kept in position against the flood tide, by a little backing of the tug, so as to keep the bark steady over the anchor chain. At the time of collision, the anchor was still upon the ground, though broken out. The stem of the Aller struck the bark on the latter's starboard side, about three feet from the stem, upon an angle crossing towards the port side of the bark by about a couple of points. The bark was so damaged that she had to be beached at once.

The testimony in the case is voluminous; in parts, very conflicting; and on some points the testimony of the same witnesses is not consistent. The main facts below stated, however, seem to me so well

established by a great preponderance of testimony, that I am constrained to find the Aller solely in fault:

1. The bark, at the time of the collision, and before, was, as I find, well within the prescribed limits of the anchorage ground of that region. She was not under way, but was engaged in heaving in her anchor. She was heading somewhere from northeast to north-northeast; and from the time when the Aller was a half mile or more away, and gave her first signal, the bark made no advance, nor any other change of position that contributed to the collision; but, on the contrary, just before the collision, she was moved somewhat to the southward through full speed reversal by the tug.

2. The Aller, at the time of her first signal, was either directly ahead, or a little on the port bow, of the bark; she then had the latter on her own starboard bow, and was crossing the bark's bow by an angle of at least one and a half points, heading down the usual channel, to the east of the anchorage ground. Had she kept that course, she would have passed to the eastward of the bark by a broad margin; and there were no other vessels in the way, and no obstructions to prevent her from going that way.

3. When the Aller had crossed the bow of the bark, and was heading down the usual channel, she ported her wheel without necessity, in an attempt to go to the westward of the bark; and while making this attempt, collided with her, as above stated, though the bark, by retreating somewhat, had aided the Aller's endeavor.

Upon the above facts, clearly the Aller was to blame. The only probable explanation of her course is, that the pilot, when he changed his course, and undertook to go to starboard under a port wheel, supposed that the bark was fully under way, and moving to the northeastward. The fact was otherwise, as might have been perceived, upon proper attention to her. None of the persons upon the Aller, however, noticed that the bark was getting up her anchor, or that she was not under headway. But it seems to me it might easily have been perceived. This should at least have been suspected from her position, and would have been confirmed by observation that she was on anchorage ground, was making no progress, and had her anchor chain still overboard. The Aller's witnesses, however, contend that the bark was not upon anchorage ground. Upon the great weight of testimony, however, I can have no doubt as to the fact that she was on anchorage ground; and that the Aller, therefore, had no right to go over that ground, except at her own risk, nor without sufficient attention to distinguish whether the bark was moving, or merely getting under way. In going upon anchorage ground, she took those risks. Steamship Co. v. Calderwood, 19 How. 241, 246.

There is an irreconcilable conflict as to the whistles given by the Aller. Her witnesses contend that her signals were of one blast, indicating that she would go to the westward. The larger number of witnesses from the America and the bark, as well as others disinterested, affirm that the Aller's signals were of two blasts. It is certain that all on the tug and bark understood the Aller's whistles

to be of two blasts. It is suggested on the part of the Aller that those two blasts came from the tug Levering, and not from the Aller. Considering the respective positions of the three boats, it does not seem to me probable that such a mistake should have been made. I do not find it material, however, to determine the fact on this point. because there is no doubt, from the testimony of the pilot of the Aller, that he understood the tug's answering signal to be of two blasts; and if his signal was of one blast only, then the tug's answer was a contrary signal when the vessels were nearly half a mile apart,—certainly more than a third of a mile. As the Aller at that time was not going over 10 or 12 knots, she would have had no difficulty in stopping before the collision by reversing at once. She did not reverse until considerably later.

For the Aller, it is further claimed that the tug should be held in fault, because her captain admits that if the Aller had given a signal "of one whistle when a mile away" he could have avoided the collision by going ahead with his tow; and that, therefore, he should have done so. As the primary fault, however, was on the Aller, and as the tug really did nothing to contribute to the collision, and was not under way, the latter cannot be held in fault for omitting to take more affirmative measures to avoid collision than she took, except upon clear and satisfactory evidence sufficient to cast upon her a legal duty to take such measures. The City of New York, 147 U. S. 72, 85, 13 Sup. Ct. 211. The evidence here is insufficient for that purpose. There is too much doubt whether the signals of the Aller were not of two blasts, instead of one. It is certain, as I have said, that the captain of the tug, and all the others, understood them as of two. But besides this, I am of the opinion that the tug and bark, not being under way, and being engaged in heaving the anchor, and being stationary by land, were under no obligation to start up and drag their anchor in order to get out of the way of the Aller; but, on the contrary, it was wholly the duty of the Aller to keep out of the way of the tug and bark, and no duty devolved on the bark and tug to maneuver to avoid collision until the danger of it, by the Aller's inability to avoid her, became apparent. The signals of two blasts which the tug gave, did not contribute to the collision, because they did not in the least influence the action of the Aller. Had the Aller, on the contrary, acted in conformity with them by going to the eastward, no collision would have happened; and as soon as it was perceived that the Aller was turning to the westward, involving danger, the tug reversed her engines full speed, and did all that was within her power to avoid the accident.

Decree for the libelant against the Aller, and dismissing the libel as against the America, with costs.